The next case on the docket is People v. Michael York. Will you state your name when you come up for the record? Is it Munches? Yes, Alexander Munches. Okay, great. Good afternoon, Your Honors. May I please report? As I said, my name is Alexander Munches. I'm with the Office of the State Appellate Defender, and I represent Mr. Michael York. This is appealed from the denial of a PC petition, post-conviction petition. As a remedy, we're asking that this court remand the petition for second-stage proceedings. I'd like to start out by saying that this case is in a somewhat unique procedural posture. In 2011, Mr. York timely filed a petition. The Circuit Court found it stated in just the claim, in advance of the second-stage proceedings in appointing counsel. However, no second-stage proceedings occurred. Mr. York was allowed to, the Circuit Court allowed him to withdraw his petition through counsel at a hearing that Mr. York was not personally present, and Mr. York was not told when he could refile that petition. About 15 months went by, and Mr. York attempted to refile this petition. He had somewhat of a back-and-forth with the court, and he successfully refiled the sentence, as that later the Circuit Court took this petition and said, when it dismisses the petition, I'm going to do it in a bifurcated way. If this is an initial petition, then it's untimely. If it's a successive petition, then I find that it's without support. Well, the issue of timing, though, has been conceded by the state, hasn't it? As to? Timeliness. So I think... I mean, I think the state concedes that it was error for the judge to dismiss it as untimely. Sure. I think if it's construed as an initial petition, there's no argument, you know, pursuant to Bill Clare, you can't... Circuit Courts cannot dismiss petitions at the first stage on the basis of timeliness. So that ruling clearly cannot support affirmance on appeal. Now, this petition is not a successive petition. The Court's conclusion in that regard is also wrong. But the answer is a little more complicated to see why the Court was wrong. So our starting point is the Post-Conviction Hearing Act. And the Act itself is actually silent, largely silent, regarding what to do with withdrawing petitions and refiling those petitions. For example, the Act doesn't tell Circuit Courts how they should admonish petitioners when they're allowing petitioners to in fact go pro se from that point on. The Act doesn't tell Circuit Courts what to tell the petitioner in that situation. The Act also doesn't tell Circuit Courts what to do when a petition shows back up at the Court's door. We don't know what time the petition should show up by and what should happen if the petition shows up before or after any given point down the road. Now, the Act's silence is one thing. However, the Illinois Supreme Court has interpreted the Act many, many times. We think that one case that should guide this Court's interpretation is People v. Shellstrom. Shellstrom was a case where a petitioner had filed something and the Court sought to recharacterize it as a PC petition. Two things particularly concern the Illinois Supreme Court in a situation like that. One was the Illinois Supreme Court exercised supervisory authority to tell Circuit Courts to tell the petitioner, if I recharacterize this petition, if this Court recharacterizes this petition, then you need to be aware of some dangers that are lurking in the Act in the future. In particular, Shellstrom had worried about successive petitions. The Illinois Supreme Court also exercised its supervisory authority to give Circuit Courts very concrete procedures about what to do if they're considering recharacterizing the petition. So citing Shellstrom, Shellstrom's argument to this Court is that those sorts of things should happen in a situation like this. When a petition is withdrawn. Exactly. When a petition, when a Circuit Court allows a petitioner to withdraw their petition, in effect sends them out back out into the world pro se for any future filing, the Circuit Court should tell the petitioner some very particular things. And what should, under the current law, what should... Sure. Sure. And the reason I say that is because, I mean, the argument here is that this is not a successive petition. Exactly. And so in Shellstrom, that was the issue, concern about having to show cause of prejudice in any subsequent petition if the person was recharacterized. So I think the first thing that the Court, that this appellate Court should tell Circuit Courts, give petitioners a due date. I think English lets out the red due date. If you withdraw your petition, you have a year to refile. Okay. So that's the first thing. And that's what the third, that's what the third district said in their case was 13-217 applies. And so do you agree with that decision? That is the, I think that's the right time frame. Okay. And I think the second thing that... Okay, let me stop you there and ask you a question then, because this petition, whatever it was, was filed more than 12 months after the original was withdrawn. It was filed about 15 months later, 15, 16 months. And so I think that the, so my answer, I'm going to answer my second thing that I think this Court should tell Circuit Courts. Okay. This Court should tell Circuit Courts that when the petitioner files either before that date, then timeliness of the initial petition is preserved. If the petitioner files after that date, then timeliness now becomes an issue. And the Court should proceed with what I'll call initial type proceedings. So under the Post-Conviction Hearing Act, we have basically two types of proceedings, initial and successive. The Court should basically proceed... Let me interrupt you just a second. So in this case, assuming that you want us to enter an order about timeliness, when does counsel get appointed? So if the petitioner refiles a petition, the Court should look at it. If it states it just as a claim, advance to the second stage, appoint counsel. At that point, timeliness becomes an affirmative defense for the State to raise or waive as justice requires. And the petitioner can file a response to the State's findings. It's basically proceeding with initial type proceedings. With the caveat that initial timeliness may not save later untimeliness. Well, in this case, the Court looked at the second filing, the 2013 filing, and did appoint counsel, right? No. The 2013 file is a sui sponte dismissal by the Circuit Court. So he had counsel initially. He didn't have it subsequently. The law in this area is confusing for lawyers, let alone for State litigants, and confusing, I think rightfully so, for the Circuit Court. What you see in the bifurcated order that the Circuit Court had written. Okay. Let me just back you up here a minute. If I understood Judge Kate's question, the first post-conviction petition, he voluntarily withdrew. Correct. And counsel had been appointed. Counsel had been appointed. The Circuit Court allowed the withdrawal to occur. Okay. Where Mr. York wasn't personally present. Mr. York wasn't told when he could refile, when he had to refile that. Right. So, basically, these are the, the Post-Conviction Hearing Act is silent in this area, oddly silent, but that doesn't mean you don't have guideposts. Mr. York submits that Shellstrom is a very good guidepost for this case and for future cases. So, I guess just to conclude, we have a filing in 2011, we have a withdrawal in 2012, a refiling in 2013. Under Shellstrom, this case should be remanded for second stage proceedings. Petitioners like Mr. York should be admonished when they have to refile by, and these petitions, I guess the time of this petition should remain as affirmative offenses for the state to raise or waive as justice requires. If this was a successive petition, then it was properly dismissed because there was no motion for leave to file it. Okay. But nothing would prevent him from filing a motion for leave to file a successive petition. In the 2013 filing, he had offered a reason for why he had withdrawn and then subsequently refiled, and the Supreme Court didn't expressly consider that. That would best be considered, I think, at second stage proceedings below with the appointment of counsel. Okay. But he could still file a successive petition, right? If he could show cause and prejudice. Yes. He might be, you know, subjected to the unusually harsh, I think, result in this case. Okay. Yes. So, if there are no further questions, Thank you. Thank you. Okay. Will you state your name, sir? Will do. May it please the court. Counsel. My name is Louis McNeil. I represent the state in this case. I want to, I guess everybody's on the same page now, but after a voluntarily withdrawn original post-conviction petition, a defendant has one year to refile that and have it still be considered an original petition. This is a . . . Well, I guess the third district has decided that, but our district hasn't been faced with that issue. The second district as well. Okay. People v. Macri, both of those are cited. We don't have to agree with them, right? Correct. Okay. The main case defendant relies on in this is People v. Shellstrom. That's easily distinguishable here. Shellstrom dealt with a trial court recharacterizing a defendant's pleading. In other words, and this is sua sponte, without notice to defendant. In other words, defendant thinks he's filing something, maybe complaining about his trial attorney or something like that. A trial court without defendant's knowledge recharacterizes this as his first post-conviction petition. Shellstrom's saying, no, you can't do that. There's no notice to defendant. And there are, admittedly, substantial obstacles to filing a successive post-conviction petition, mainly being the cause of prejudice test. So here the problem of notice is nonexistent because defendant was in control of this situation from the beginning. He is the one who, first of all, it was labeled a post-conviction petition in 2011, unlike Shellstrom. And he is the one who voluntarily withdrew that petition. It's not like the state sua sponte dismissed it or whatever. He voluntarily withdrew it. There was no issues of notice, as in Shellstrom, which is presumably why People v. English and People v. Macri don't mention Shellstrom, as it's not much help to cases like this. In contrast, that case, English and Macri are directly on point. They deal with the exact same situation as this, a defendant who voluntarily withdraws his first post-conviction petition. In English, he refiles or reinstates his petition within a year, so they found four defendants. In Macri, the defendant waits well past a year and then reinstates a subsequent petition. In that case, as in this one, it's the same facts. The defendant in this case waited past a year as well. In both of those, in this case and that case, the defendant failed to even attempt to establish cause of prejudice, failed to file a motion for leave to file this subsequent petition. Therefore, the trial court properly dismissed the defendant's petition here for failure to obtain leave. For some reason, the trial court wanted to check off as many boxes as possible, and they also dismissed it as being untimely. If it is an original petition, it's well settled that they can't dismiss it. At the first stage, they can't summarily dismiss an original post-conviction petition for untimeliness at the first stage. However, this court is not bound by the trial court's reasoning for dismissal. The easiest way to affirm the dismissal of this petition here is that these issues are procedurally defaulted. They could have been raised on direct appeal, and they were not. It makes no difference that the defendant's agreement was that he would not appeal. That's the very agreement he made knowingly and voluntarily, and he got a benefit from the state and a great sentencing cap of 20 years in that case. Well, unless he had an effective assistance of counsel. Well, he was well aware of the conflict of interest. At the sentencing period. Absolutely. But not before. Yes. We don't know when before. But he said, I was advised of this prior to this, and I had no problems then, and I have no problems now. I don't have the record, but I thought the brace indicated that it was at sentencing when he was told that his counsel had represented the victim. That seems a little late. Well, he says, the trial court asked the defendant, did defense counsel make you aware that he had previously represented the victim? Defendant replied, yes, he did. He had no objection to defense counsel's prior representation of the victim. At the time, counsel made him aware, nor did he have an objection to counsel's continued representation. So this indicates that he was made aware of this conflict of interest in the past. We don't know when then. Right. Either way, could this have been an arguable issue on appeal? Maybe it could have been. That's presumably why the state offered this agreed-upon sentencing cap. I mean, it's well settled that a defendant can waive his appeal rights. Defendant validly did that, and the trial court almost excessively talked about this conflict of interest issue, letting him know that it could be a possible issue. But, I mean, if we play this out, even from the defendant's position, if he won on appeal of this conflict of interest, this retried, the same overwhelming evidence is going to be presented. Presumably he's going to be found guilty again, and there will be no 20-year sentencing recommendation by the state in that instance. Presumably he maybe started to see what the favorable position he was in when he withdrew his first post-conviction petition based on counsel saying, hey, if you give retried, you could very well get a greater sentence. This was sound advice. Of course, it would be absurd to hold the state to its end of the bargaining when defendant welched on his end of the bargaining before that. The whole reason it would be retried would be because the defendant appealed. I mean, except there does happen to be a statute that says if your sentence is vacated on collateral attack, you can't get any greater sentence. There are. And no need to get into a big, this is kind of a side issue here. Well, there's case law, which I cited, that states that that statutory section doesn't apply when, I mean, this was a guilty plea, but it was still a negotiated agreement between the defendant and the state, that that section does not apply as it would apply in the face of contract principles to have that apply. Oh, I mean, the state gave consideration as well as the defendant in this agreement. Well, there's a long history of this. I mean, the U.S. Supreme Court in the Warren era said you can't give somebody a greater sentence if their sentence is vacated on appeal or whatever. Shortly after that, the state of Illinois passed this statute. Then later in the Rehnquist era, they decided that if it was a guilty plea, that you could get a greater sentence. But this statute's never been amended. Well, the reason, the rationale behind a guilty plea being a greater sentence is because of the contract in place between defendant and state in existence. It would be somewhat absurd to, if a defendant withdraws his guilty plea, to then hold the state to the end of an already broken contract. Okay. It's, like I say, a side issue in this case. Well, of course. I mean, at the very least, it was not a reasonable assistance of post-conviction counsel for him to advise a defendant that he could possibly serve a greater sentence on retrial because there would be no 20-year sentencing cap unless he tried this again. And as for People v. English, the 3rd District case, this is the one that McAree relied on. Defendant sort of jumps through hoops to try to say that the holding is not that the defendant has one year after a voluntarily withdrawn petition to reinstate or refile an amended or the same petition. Clearly, that's the holding in English, and that's the correct analysis that the McAree Court in the 2nd District followed on a case with the exact same facts as the present case in finding that the trial court was correct in dismissing the defendant's petition for failure to obtain leave. If the Court has no more questions, I thank you for your time. Thank you. Mr. Bonham? Yes, thank you. Justice Stewart, as you suggested, the court issue in this appeal is the Post-Conviction Hearing Act's silence on a very important issue, the refiling of withdrawn petitions. Dutiful petitioners can search the Act up and down and not find the answers that are suggested by inference in People v. English or whatnot in People v. McAree. This is an area that the courts must speak because the Post-Conviction Hearing Act has been silent. We ask that this Court hold that petitioners in Mr. York's position must be admonished about due dates. And we ask that this Court tell circuit courts how the proceedings should occur after the petitions are refiled. We suggest that between two options, an initial type, post-conviction proceeding, and a successive type, they are not equals. Under People v. Risley, the Illinois Supreme Court has made clear that the Act itself should be liberally construed in favor of original filers. We ask that Mr. York's matter be remanded to second stage proceedings, the appointment of counsel, at which time the State may raise or waive its permanent offensive timings. Thank you very much. Okay, this matter will be taken under advisement and we will issue an order to decode. Of course, gentlemen, thank you very much for your audience today.